UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSUE G. MANZO,

    Plaintiff,

v.                                                      Case No. 3:19cv3357-LC-HTC

C. COURTNEY, et al.,

    Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC") currently incarcerated at Columbia Correctional Institution, brings this action, *pro se* and *in forma pauperis*, against Defendants Hall, Dove, and Courtney, for failing to place him in protective management while at Okaloosa Correctional Institute ("Okaloosa CI") and, instead, transferring him to Cross City Correctional Institute ("Cross City CI"), where he was assaulted by another inmate. ECF Doc. 14 at 5.

This matter is before the Court on Defendants' motion for summary judgment (ECF Doc. 43) and Plaintiff's response in opposition (ECF Doc. 47). The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon consideration of

the motion, Plaintiff's response, and relevant law, the undersigned respectfully recommends Defendants' motion be GRANTED and this case be dismissed.

## I.     FACTUAL BACKGROUND

Unless otherwise stated, the following facts are undisputed:

While at Okaloosa CI, Plaintiff requested and was initially denied protective management by the State Classification Officer ("SCO") in early June 2018, ECF Doc. 43-1 at 9.  He was subsequently released to the general population.  Plaintiff filed an appeal of that decision to the Secretary.  ECF Doc. 47 at 15.

In the appeal, Plaintiff states that he was attacked on April 29, 2018, at Okaloosa CI by an unknown inmate, who is a member of the gang "Unforgiven." *Id.*  He also writes about having been threatened and assaulted six (6) different times at four (4) separate FDOC institutions:  in October 2015 and July 2016, at Taylor Correctional Institution; in 2016 at Mayor Correctional Institution; in 2017 at Jackson Correctional Institution (Jackson CI); and in December 2017 at Holmes Correctional Institution (Holmes CI).  As to each assault, Plaintiff alleges they were "because of [his] charge."[1]  *Id.*

On July 5, 2018, while still housed at Okaloosa CI, Plaintiff again requested protective management and provided the following written statement:

---

[1] Plaintiff is a child sex offender.  *See* *http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=B03644&TypeSearch=AI*.

Case No. 3:19cv3357-LC-HTC

> I am in fear for my life *and can no longer live on this compound.* This is the second time that I have been threatened by the same group of people. This is a continuous problem please help me! I am requesting protective management.

ECF Doc. 43-1 at 12 (emphasis added).

The officer who received Plaintiff's request placed Plaintiff in administrative confinement pending a review of his request. *Id*. at 10.

On July 6, 2018, Defendants Dove and Courtney, as members of the Institutional Classification Team (ICT), reviewed Plaintiff's placement in administrative confinement and the extent of his protection from other inmates. *Id.*

On July 9, 2018, a separate officer initiated the investigation process and reviewed Plaintiff's written statement. *Id.* at 3, 10. The investigating officer also reviewed Plaintiff's file and noted Plaintiff had requested protective management twice before and had no established gang affiliation.[2] *Id.* at 10.

On July 13, 2018, Defendants Dove and Courtney met with Plaintiff to review his request for protective management and gather information. *Id.* After speaking with Plaintiff, Defendants Dove and Courtney recommended further investigation and requested that the State Classification Officer "provide ICT with investigation." *Id.*

---

[2] The entry for this date references inmate Welch. As part of their motion for summary judgment, Defendants attached a Declaration from Russ Pridgeon, who noted "that a typographical error occurred in the write up of that information in the report that incorrectly referred to inmate Manzo as inmate Welch, however, the information collected did relate to inmate Manzo." ECF Doc. 43-1 at 3-4.

Case No. 3:19cv3357-LC-HTC

On July 26, 2018, a new officer was assigned to interview Plaintiff. *Id.* Although the parties do not dispute this interview occurred, the parties only dispute what information was communicated during the interview. According to Defendants, when Plaintiff was initially placed in administrative confinement, he refused to provide any specific information regarding the threats "due to fear of retaliation by the other inmate or his 'brothers.'" *Id.* at 10. Defendants contend Plaintiff "maintained his previous [written] statement" during the July 26, 2018 interview. *Id.* Defendants also assert that Plaintiff would not provide the location of where he was threatened. *Id.*; ECF Doc. 43 at 17.

Plaintiff disputes these allegations and asserts he "was clear that it was a group of people" who threatened him and that he did "not know a specific name." ECF Doc. 47 at 2. Plaintiff also disputes that he failed to provide the location of the incident as he told the officer to "to check the cameras that point to [his] cell" to see the "multiple inmates who threatened to do harm or death." *Id.* at 10.

On July 27, 2018,[3] Defendants Courtney, Dove, and Hall re-interviewed Plaintiff. ECF Doc. 43-1 at 10. As with the other interview, the parties only dispute what information was communicated during the interview. *Id.* Defendants assert Plaintiff remained uncooperative and refused to provide any information or "the

---

[3] Although Plaintiff lists this date as July 17, 2018, in his second amended complaint, Plaintiff does not dispute "he had multiple verbal meetings with Defendant[s]," ECF Doc. 47 at 2, and that the investigation took place between "the dates of July 5–30 2018." *Id.* at 9.

Case No. 3:19cv3357-LC-HTC

Case 3:19-cv-03357-LC-HTC   Document 48   Filed 05/06/21   Page 5 of 18

Page **5** of **18**

identity of any inmate." *Id.* Plaintiff asserts he told Defendants Courtney, Dove, and Hall "about [his] history of being attacked at every institution" and that he did not know the name of the inmate who attacked him, but the April 28, 2018[4] attack was by an inmate who belonged to the gang "Unforgiven." ECF Doc. 47 at 3.

Also, on July 27, 2018, Defendants recommended Plaintiff's request for protective management be denied, but that he be transferred to another institution, "as this continues to be an issue at this facility." ECF Doc. 43-1 at 10.

On July 30, 2018, the SCO entered a final decision denying Plaintiff's request for protective management. *Id.*

Plaintiff remained in administrative confinement during the entire review process, from July 2018 until September 2018, when he was transferred to Cross City CI. *Id.* at 6.

Plaintiff alleges he was assaulted at Cross City CI but has not provided any information about that assault, including when it occurred, who assaulted him, or if he requested protective management once he arrived there.

## II.     LEGAL STANDARD

To prevail on a motion for summary judgment, the Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S.

---

[4] Plaintiff lists this date as April 29, 2018, in his appeal to the Secretary. ECF Doc. 47 at 15.

Case No. 3:19cv3357-LC-HTC

317, 322–23 (1986).  If the Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 248 (1986).  An issue of fact is material if it is a legal element of the claim, under the applicable substantive law, which might affect the outcome of the case.  *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  Additionally, the Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

## III. DISCUSSION

Defendants have moved for summary judgment on three grounds: (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff fails to state an Eighth Amendment constitutional violation, and (3) Defendants are entitled to qualified immunity.  ECF Doc. 43.

As discussed further below, the undersigned finds, as she did in her prior Report and Recommendation (ECF Doc. 34), which was adopted by the Court (ECF Doc. 36), that Plaintiff has exhausted his administrative remedies.  However, while exhaustion is not a basis for entering judgment in favor of Defendants, the

Case No. 3:19cv3357-LC-HTC

undersigned finds Defendants are nonetheless entitled to judgment because Plaintiff has failed to present evidence from which a reasonable jury could find that Defendants violated Plaintiff's rights under the Eighth Amendment.[5]

### A. Failure to Exhaust

On May 15, 2020, Defendants filed a Motion to Dismiss on the sole basis that Plaintiff had not exhausted his administrative remedies. ECF Doc. 31. The crux of Defendants' argument was Plaintiff could not have exhausted his administrative remedies because he did not file any grievances between July and August 2018 even though the denial of protective management complained of in the second amended complaint did not occur until July 2018. Thus, Defendants argued any grievances that were submitted prior to July 2018, even if they were based on a failure to protect, were not sufficient to exhaust the claims at issue. The Court disagreed with the Defendants then, and the undersigned continues to disagree with Defendants now.

While Defendants are correct that Plaintiff did not file an appeal of the SCO's July decision or any grievance after he was denied protective management on July 30, 2018, it is likewise undisputed that Plaintiff did file an appeal of the SCO's June 2018 denial of protective management. The June request for protective management and appeal were based on the same incidents of assault as the July 2018 request.

---

[5] Because the undersigned finds, as a matter of law, that Plaintiff has failed to establish Defendants violated his rights under the Eighth Amendment, the undersign need not address Defendants' qualified immunity arguments.

Case No. 3:19cv3357-LC-HTC

Those incidents are also the same incidents addressed in Plaintiff's second amended complaint.

"[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress was sought." *Harvard v. Inch*, 411 F.Supp.3d 1220, 1244 (N.D. Fla. 2019) (citing *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2020)).  Plaintiff's June appeal clearly alerted the FDOC to the nature of the wrong at issue in this suit—the institution's failure to provide protective management after an assault at Okaloosa CI and several prior assaults at other institutions.  The June appeal also alerted the FDOC to the redress sought—protective management.  Thus, the FDOC had notice of the issues alleged in the second amended complaint and had the opportunity to investigate those issues.  *See id.*

The Defendants objected to the undersigned's report and recommendation, which was overruled by the Court.  ECF Doc. 36.  Although the Court's determination of a prior motion to dismiss does not preclude the Court from reversing course and granting a motion for summary judgment on the same ground, the Court should decline to do so here.  Defendants have presented no new evidence or even new arguments in their motion for summary judgment on this issue.  Instead,

Case No. 3:19cv3357-LC-HTC

Defendants make the exact same arguments they did in their objection—namely, that Plaintiff did not file any grievances related to the July denial of protection.[6]

As previously stated, however, Plaintiff did not have to file a second appeal specifically about the July denial of protective management for him to exhaust his administrative remedies. *See Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (holding that a prisoner "was not required to initiate another round of the administrative grievance process on the exact same issue each time another request . . . was denied"); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("Given the circumstances of this case and the nature of Johnson's complaint, we do not believe that he was required to file repeated grievances reminding the prison officials that he remained subject to attack in the general population. Johnson's grievances were sufficient to exhaust claims that arose from the same continuing failure to protect him from sexual assault."). The undersigned, thus, recommends the motion for summary judgment be denied on the issue of exhaustion.

---

[6] In the report and recommendation, the undersigned noted the Secretary's denial of Plaintiff's appeal of the SCO's June 2018 decision referenced Plaintiff's discussions with the ICT. Thus, at that time, the undersigned was not sure whether the "July 17" meeting referenced in Plaintiff's second amended complaint may have occurred prior to the SCO decision, and the Plaintiff simply misremembered the date. At the time the motion to dismiss was filed, there was no evidence or allegation of a prior June 2018 request for protective management and denial. Regardless, the undersigned found Plaintiff had exhausted even if there were no error in the date because the June appeal was based on the same facts as the basis for protection raised in the July request and in the second amended complaint.

Case No. 3:19cv3357-LC-HTC

## B. Eighth Amendment Failure to Protect

Defendants also move for summary judgment on Plaintiff's failure to protect claim, arguing Plaintiff cannot demonstrate Defendants' decision to deny his request for protective management and transfer him to Cross City CI violated his rights under the Eighth Amendment. For the reasons set forth herein, the undersigned agrees and recommends judgment be entered in favor of the Defendants.

The Eighth Amendment "imposes [a] dut[y] on [prison] officials" to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Simply stated, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. However, not "every injury suffered by one inmate at the hands of another translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.

"To survive summary judgment on a deliberate indifference failure-to-protect claim, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants['] deliberate indifference to that risk; and (3) causation." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal quotations omitted). Deliberate indifference has two components: one subjective and one objective. *Id*.

To satisfy the subjective component, Plaintiff must provide evidence "the defendant 'actually . . . knew that an inmate faced a substantial risk of serious

harm.'" *Id.* (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 619 (11th Cir. 2007)). To satisfy the objective component, Plaintiff must show "that the 'defendant disregarded that known risk by failing to respond to it in . . . [a] reasonable manner.'" *Id.* (quoting *Farmer*, 511 U.S. at 829, 837, 844)). Thus, a prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Id.* (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (internal quotation marks omitted).

A defendant may avoid Eighth Amendment liability by (1) showing he was not aware "of the underlying facts indicating a sufficiently substantial danger" and that he was "therefore unaware of a danger"; (2) admitting awareness of "the underlying facts" of a substantial danger, but showing he believed the danger "was insubstantial or nonexistent"; or (3) showing he "responded reasonably" to a known substantial danger, "even if the harm ultimately was not averted." *Id.* at 617–18. A defendant's response, even if inadequate, must be more than gross negligence. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331–32 (11th Cir. 2013); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983.").

For purposes of the summary judgment analysis only, the Court finds that Plaintiff has presented evidence from which a reasonable jury could find that Defendants were aware of a substantial risk of harm to Plaintiff if he stayed in the

Case No. 3:19cv3357-LC-HTC

general population at Okaloosa CI.  *See Purcell ex rel. Est. of Morgan v. Toombs Cty., Ga*, 400 F.3d 1313, 1320 (11th Cir. 2005) ("A prisoner has a right, secured by the eighth . . . amendment[ ], to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates[.]" (citing *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973)).

As set forth above, Plaintiff reported he had received threats on his life while at Okaloosa CI, had been assaulted in April at Okaloosa CI by an inmate belonging to the gang "Unforgiven," and had been assaulted at other institutions.  While Defendants contend Plaintiff failed to cooperate or provide sufficient information for Defendants to investigate the claim, much less be aware of a substantial risk of harm, Plaintiff contends otherwise.  While Plaintiff may ultimately be unsuccessful at establishing the subjective element at trial, at the summary judgment stage, it is not the Court's prerogative to resolve such issues of fact.  *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) ("If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Plaintiff, however, has failed to present any evidence from which a reasonable jury could infer that Defendants were deliberately indifferent in how they responded to that risk.  To meet the objective component, Plaintiff must show Defendants' decision to transfer Plaintiff to Cross City CI (rather than place him in protective

management at Okaloosa CI) was unreasonable. Plaintiff, however, cannot make this showing because there is no evidence Defendants were aware of a risk of danger to Plaintiff at Cross City CI.

While a reasonable jury could find that Defendants were aware Plaintiff had been threatened and assaulted at Okaloosa CI, and that Plaintiff had previously been assaulted at other facilities, there is no evidence Defendants were aware of any specific danger to Plaintiff at Cross City CI. There is no evidence Defendants knew the same risk that Plaintiff faced at those other institutions would continue at Cross City CI. Plaintiff's generalized fear of assault because of his "charge" is not sufficient. *See Fletcher v. Phelps*, 639 F. App'x 85, 88 (3d Cir. 2015) (finding evidence that defendant officer was told by plaintiff his cellmate was harassing him because he is homosexual, that inmate had touched plaintiff and harassed him for sex, and that plaintiff feared him was "insufficient to show that [the defendant] was aware of a substantial risk of harm").

Even accepting Plaintiff's version of what he told Defendants during his interviews, at no time did Plaintiff express fear in being transferred to Cross City CI or any other institution. *Compare Johnson v. Schiff*, No. 9:11-CV-00531 MAD, 2013 WL 5466638, at *11 (N.D.N.Y. Sept. 30, 2013) (denying Defendants' motion for summary judgment because, prior to transferring Plaintiff to a different institution, Plaintiff informed Defendants "he had been subject to abuse by

corrections officers at" that facility). At no time did Plaintiff indicate there was anyone at Cross City CI who might want to do him harm.

Instead, as discussed in the facts, Plaintiff's written statement seeking protective management was that he could "no longer live on this compound." ECF Doc. 43-1 at 10. There is also no evidence members of the gang "Unforgiven" resided at Cross City CI or the July 5 threats reported by Plaintiff would be carried out at Cross City CI. Indeed, because Plaintiff has provided no information regarding the attack at Cross City CI, other than that it occurred, there is no evidence regarding why he was attacked, who attacked him, or if the attacker was part of the gang "Unforgiven."

Moreover, this is not a case where Defendants did nothing to protect Plaintiff. *See Mosley v.* Zachery, 966 F.3d 1265 (11th Cir. 2020) ("Lt. Zachery, also unlike the sheriff in *Marsh*, did not do 'absolutely nothing' in response to Taylor's threat"). Defendants not only recommended Plaintiff be transferred from Okaloosa CI, the very institution he stated he could not "live on," but Plaintiff was also placed and maintained in administrative confinement—segregated from the general population while Defendants investigated Plaintiff's reports of harm and potential harm.[7] *See Goodwin v. DeSpain*, 2018 WL 2946420, at *6 (S.D. Ala. Mar. 7, 2018)

---

[7] Administrative confinement "refers to the temporary separation of an inmate from inmates in general population in order to provide for security and safety." Fla. Admin. Code Ann. r. 33-602.220.

Case No. 3:19cv3357-LC-HTC

("Defendants were aware of [Plaintiff's] enemies and their potential harm to Plaintiff, and Defendants acted reasonably in housing Plaintiff in segregation away from the risk of serious, known harm."), *report and recommendation adopted*, 2018 WL 2944158 (S.D. Ala. June 12, 2018).  Plaintiff's placement in administrative confinement was consistent with the Florida Administrative code.  *See* Fla. Admin. Code Ann. r. 33-602.220(3)(c) ("Inmates shall be placed in administrative confinement pending review of the inmate's request for protection from other inmates.").

Although placing Plaintiff in protective management was an option for Defendants, it was not the only option.  The Florida Administrative Code states that administrative confinement is used "until such time as a more permanent inmate decision can be concluded such as disciplinary confinement, close management, protective management *or transfer*."  Fla. Admin. Code § 33-602.221(1)(a) (emphasis added).  This Circuit has rejected the argument that when a prisoner says he is in fear for his life, the only reasonable response is for a prison official to place the prisoner in protective custody.  *See Mosely*, 966 F.3d at 1265 (finding that it was reasonable for defendant to segregate and monitor plaintiff while defendant finished her shift); *Ogles v. Trimble,* No. 5:15-CV-00054 (MTT), 2016 WL 491848 (M.D. Ga. Jan. 5, 2016), *report and recommendation adopted*, No. 5:15-CV-54 (MTT), 2016 WL 498255 (M.D. Ga. Feb. 8, 2016) (dismissing complaint for failure to protect, finding that lockdown, rather than protect management, was an objectively

reasonable response to the inmate's complained-of threats); *Doe v. George Dept. of Corr.*, 248 F. App'x 67, 71 (11th Cir. 2007) (finding that "the immediate commencement of an investigatory process into unsubstantiated and contested accusations" was an objectively reasonable response even "without additional affirmative measures to ensure safety").

"A prisoner does not have a basis for a civil rights claim for failure to protect simply because he disagrees with the classification decision made by classification officials." *Muhammad v. Sloan*, 2010 WL 99349, at *2 (N.D. Tex. Jan. 8, 2010) (finding that, "at most" plaintiff has merely shown he disagrees with the defendant's decision (citing *Neals v. Norwood*, 59 F.3d 530 (5th Cir. 1995)). Defendants cannot be held liable under the Eighth Amendment unless they acted with deliberate indifference in choosing an alternative option; i.e., a transfer. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) ("[T]he Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations and internal quotation marks omitted)); *Hughes,* 894 F.2d at 1537 ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983.").

Defendants' decision to transfer Plaintiff to Cross City CI was not unreasonable. *See Venneau v. Woodard,* 2020 WL 3064331, at *3–4 (M.D. Fla. Jun. 9, 2020) (granting motion to dismiss failure to protect claim where plaintiff was

immediately placed in administrative confinement and then transferred and subsequent assault incident occurred at different institution two months later). It was not deliberately indifferent. *Id.* And, it was not grossly negligent. *Id.*

Finally, while the Court does not necessarily need to address causation,[8] the undersigned also notes that because Plaintiff was injured at Cross City CI, there is no evidence Defendants' caused the assault. Protective management decisions are made by the ICT at each facility, in conjunction with the SCO. *Williams v. Swain*, No. 3:16-CV-45-J-34JRK, 2019 WL 1117094, at *13 (M.D. Fla. Mar. 11, 2019); *see* Fla. Admin. Code rules 33-601.209(3), 33-602.221(2)(d). Defendants are, or were, employees of Okaloosa CI, not Cross City CI. Thus, they cannot be responsible for not placing Plaintiff in, or recommending him for, protective management while he was at Cross City CI. Moreover, as stated above, because Plaintiff has provided no facts regarding that assault, there is no evidence regarding whether Plaintiff even requested protective management at Cross City CI, whether there were threats made before the assault occurred, or even if there were any similarities between that assault and the ones that Defendants were aware of.

Thus, the undersigned finds there are no facts from which a reasonable jury could find that Defendants were deliberately indifferent in failing to protect Plaintiff.

---

[8] *See Lacy v. Duell*, No. 1:14-CV-537, 2017 WL 2779187, at *1 (W.D. Mich. June 27, 2017) (finding that because Plaintiff could not establish his transfer to a less desirable prison supported a claim for retaliation, "it was unnecessary for the Magistrate Judge to address the issue of causation").

Case No. 3:19cv3357-LC-HTC

## IV.   CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1.   Defendants' Motion for Summary Judgment (ECF Doc. 43) be GRANTED.

2.   Judgment be entered in favor of the Defendants on all claims.

3.   The clerk be directed to close the file.

DONE AND ORDERED this 6th day of May, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.